in mind the scheme suggested by counsel, it has failed to express its true intention, and we cannot undertake to supply the deficiency. But there is in fact no difficulty in giving to the section a rational interpretation, capable of practical application. This has been done by the court at special term. This part of the Gravesend annexation act is to be regarded as prescribing a general rule of taxation to be applied to the acquired territory, rather than as a provision for the exemption of property there situated. Giving to its language the ordinary meaning of the words used, it requires all the real estate in the annexed district to be assessed at the value of the land for agricultural purposes, with certain exceptions. These exceptions comprise three classes of property: (1) Real estate divided up into building lots, a map of which has been filed in the office of the register or the board of assessors, and a sale of which has been made, referring to such map; (2) real estate otherwise sold as a building lot; and (3) real estate used as a building lot. It is clear that the property of the relator does not fall within any of these exceptions. The return of the assessors expressly states that they do not deny that his property is now, and always has been, used for farming purposes alone; and I have already shown that there is no pretense that any sales with reference to a map have ever been made.

Section 3 of title 10 of the charter of the city of Brooklyn (see Laws 1895, c. 1015) requires that all assessments shall refer to ward maps where they exist. The Gravesend annexation act provided that all public books, papers, and documents of the town on file in any office, or with any officer thereof, should be transferred to and filed with the appropriate officers or departments of the city of Brooklyn. It is said in behalf of the appellants that the map mentioned in the return came to the assessors under this provision, and the suggestion is that it therefore became their duty to assess the relator's property according to that map, upon which it appeared by block and lot number. The return, however, wholly fails to show that the map spoken of therein came to the assessors from the town of Gravesend under the statute, or that it ever constituted a public record there or anywhere else. For all that appears, it may have been procured by the assessors themselves from the manufacturer, and filed in their office on the day they made the assessment.

The order of the special term should be affirmed, with $10 costs and disbursements. All concur.

---

(16 App. Div. 143.)

### FRINDEL v. SHAIKEWITZ.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

1. WITNESS—REFRESHING MEMORY—MEMORANDA.
    It is proper to allow a witness to refresh his memory by referring to a copy of an original book of account kept by him, the original book not being accessible.

2. TRIAL—RECEPTION OF EVIDENCE—REOPENING CASE.
    It is discretionary with the court to admit evidence offered by a party after resting.

Appeal from trial term, Kings county.

Action by Simon Frindel against Nochem Maier Shaikewitz to recover money alleged to have been loaned. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Abraham N. Sarasohn, for appellant.

M. Hallheimer, for respondent.

BRADLEY, J. The parties in 1883 and 1884 were residents of the city of Odessa, in the empire of Russia. The plaintiff came from Russia to Brooklyn in the year 1887, and the defendant came in 1889. The plaintiff alleges that in the years 1883 and 1884, at Odessa, he loaned to the defendant 536 roubles and 60 kopeks, and that in 1889 he paid $24 for a passage ticket for the defendant to New York, and lent him the further sum of 20 roubles, at his request. His testimony is to the same effect. The defendant, by his testimony, denies loaning any money of the plaintiff in Odessa; and, admitting that the plaintiff advanced the money to pay for his passage ticket, and loaned him the 20 roubles, he testifies that he repaid the same to the plaintiff, whose evidence is to the effect that no part of such sum has been paid. There is not much evidence corroborative of that of either party. The case was fairly submitted by the charge of the court to the jury. The result was a verdict for the plaintiff for the amount of his alleged claim and interest. Upon the trial the plaintiff had a statement in items of his alleged loans made at Odessa, consisting of about 20 items, in a small book. His testimony is that he copied these items from a larger book left by him at Odessa. There was no error in permitting him to refer to this statement to refresh his recollection of the items of loans which his evidence tended to prove he had made to the defendant. Howard v. McDonough, 77 N. Y. 592.

After the defendant had rested, the plaintiff was recalled in his own behalf, and gave evidence contradicting that of the defendant, to the effect that he had paid to the plaintiff the amount which he so recognized as having been advanced to and for him. The defendant's counsel then, on the cross-examination of the plaintiff, asked him, in effect, how, not understanding the English language when at Odessa, he, in making the copy of the entries in the book in the Russian language, came to use the word "rent" at the place where and as it appeared in the small book. The answer was that " 'rent' is in the Russian language, in the German language, and in the Jewish language." Thereupon a witness was called on the part of the defendant, and, after stating that he understood the Russian language, was asked to give the Russian word for "rent." The objection taken by the plaintiff's counsel was sustained by the court, and exception taken. This was not error. As the defendant had rested his case, it was discretionary with the court to permit him to introduce the excluded evidence thus called for. It may be assumed that if the statement which the defendant sought

to controvert had been called out, and the contradicting evidence offered, before the defendant rested, it would have been received by the court. This is evident from the remark made by the learned justice to the effect that he would not receive it at that late stage of the trial. While the result which should have followed the submission of the case to the jury appears, upon the evidence, to have been one of much doubt, the question was one of fact, peculiarly for the jury, and we can see no occasion to interfere with the conclusion reached by them.

The judgment and order should therefore be affirmed. All concur.